RECEIVED
IN LAKE CHARLES, LA
DEC 22 2016
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| DAVID C. CHURCH | * | CIVIL ACTION NO. 2:16-CV-00242 |
| v. | * | JUDGE MINALDI |
| COMMISSIONER, U.S. SOCIAL SECURITY ADMINISTRATION | * | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is an appeal from a final administrative decision made by the Social Security Administration (Rec. Doc. 1) filed by the plaintiff David Church. Church has filed a brief, explaining his grounds for appeal (Rec. Doc. 7), and the Commissioner has filed a response (Rec. Doc. 8). For the following reasons, the final administrative decision made by the Social Security Administration will be **AFFIRMED**.

## FACTS & PROCEDURAL HISTORY

Church, a veteran who served in the army, suffers from degenerative disc disease, migraines, and affective disorder. Degenerative disc disease is a chronic impairment that causes neck and back pain. As a result of his degenerative disc disease, he medically retired from the army after he was unable to fulfill the duties of the infantry.[1] In September 2014, the Veterans Administration (VA) determined that he was permanently and completely disabled from serving in the military.[2] The VA noted that Church could not bend, crawl, crouch, jump, land, kneel, run, or twist; that Church was limited to carrying no more than 20 pounds; that Church could not

---

[1] VA/DOD Joint Disability Evaluation (Rec. Doc. 5-3), p. 291.
[2] VA Disability Determination (Rec. Doc. 5-1), pp. 132-41.

1

stand more than 20 minutes per hours; and that Church could not walk more than a mile.[3] On January 28, 2015, Church applied to the Social Security Administration for disability benefits.[4] He was initially denied on May 8, 2015, and subsequently requested a hearing in front of an Administrative Law Judge (ALJ).[5] This hearing was held on September 9, 2015, and on October 23, 2015, the ALJ affirmed the initial denial of disability benefits.[6]

The ALJ based his denial on Church's testimony and medical records. Church testified in the hearing that he had constant pain in his back and neck, which he attempted to manage with medication.[7] He reported that he was unable to work because of the pain, and often had to take breaks throughout the day to lie down for relief. Church also explained that his day-to-day routine included helping his children get ready for school and complete their homework. He also reported that he mowed the lawn and went on daily walks. He testified that after mowing the lawn or doing any strenuous activity, his pain would increase the following day, essentially debilitating him.

The ALJ found that the degenerative disc disease was a severe impairment for the purposes of disability benefits, that the reported headaches were unsupported by medical evidence as a permanent hindrance, and that the affective disorder had minimal effects on Church's mental abilities.[8] While the ALJ found that the pain associated with Church's degenerative disc disease was substantiated by medical evidence, he discredited Church's

---

[3] VA Disability Determination (Rec. Doc. 5-1), p. 132

[4] ALJ Decision (Rec. Doc. 5-1), p. 15.

[5] ALJ Decision (Rec. Doc. 5-1), p. 15.

[6] ALJ Decision (Rec. Doc. 5-1), pp. 15, 23.

[7] Transcript of Church (Rec. Doc. 5-1), pp. 29-45.

[8] ALJ Decision (Rec. Doc. 5-1), p. 18.

testimony about the intensity, persistence, and limiting effects of the pain.[9] The ALJ found that Church's reported level of functioning, such as mowing the lawn, discredited Church's allegations about the severity of the pain.[10] Based on Church's reported level of actual activity, the ALJ also discredited the VA's complete disability determination.[11] The ALJ found that Church's degenerative disc disease restricted him light work, with an added limitation of needing to change postures every 45 minutes, with up to a five minute break between each posture change.[12] Based on these limitations, Church's age, Church's education, and Church's past work experience, the ALJ adopted the vocational expert's determination that Church could work as a polisher, surveillance system monitor, or order clerk.[13] Because Church was able to work, the ALJ found that he was not eligible for Social Security disability benefits.[14]

Church appealed the ALJ's decision to the Social Security appeals council, which denied the appeal on December 21, 2015.[15] On February 22, 2016, Church appealed to this court, arguing that the ALJ's decision was not supported by substantial evidence and that the decision was contrary to law.[16]

## LAW & ANALYSIS

### I. Standard of Review

This court's "review of the Commissioner's decision is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2)

---

[9] ALJ Decision (Rec. Doc. 5-1), p. 20.

[10] ALJ Decision (Rec. Doc. 5-1), p. 20.

[11] ALJ Decision (Rec. Doc. 5-1), p. 21.

[12] ALJ Decision (Rec. Doc. 5-1), p. 22.

[13] ALJ Decision (Rec. Doc. 5-1), p. 22.

[14] ALJ Decision (Rec. Doc. 5-1), pp. 22-23.

[15] Denial of Appeal (Rec. Doc. 5-1), pp. 5-7.

[16] Compl. (Rec. Doc. 1).

whether the Commissioner applied the proper legal standard." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir.2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994)).

> Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. In applying the substantial evidence standard, the court scrutinizes the record to determine whether such evidence is present, but may not reweigh the evidence or substitute its judgment for the Commissioner's. Conflicts of evidence are for the Commissioner, not the courts, to resolve. If the Commissioner's fact findings are supported by substantial evidence, they are conclusive.

*Id.* (internal quotations and citations omitted).

## II. Burden of Proof

The claimant has the burden of proving that he suffers from a disability that qualifies him for benefits. *Id.* Such a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To evaluate a disability claim, the ALJ conducts a five-step sequential analysis, asking:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

*Id.* (citing 20 C.F.R. § 404.1520). As a threshold inquiry, to be determined to be disabled, the claimant has the burden of establishing that he is not currently working (step one) and that he is severely impaired (step two). If the claimant fails to establish steps one or two, the ALJ would find the claimant ineligible for disability benefits. If the claimant establishes steps one and two, to be eligible for disability benefits, the claimant must also establish either that his impairment is

listed in the Code of Federal Regulations as a *per se* disability (step three) or that his impairment prevents him from returning to his old job (step four). If the claimant establishes step three, the ALJ's inquiry ceases, and the claimant is eligible for disability benefits. If the claimant cannot establish step three but establishes step four, the burden shifts to the Commissioner to demonstrate that the claimant's impairment does not prevent him from doing other work (step five), and the claimant has an opportunity to rebut the Commissioner. If the claimant can still do other work despite his impairment, the claimant is ineligible for disability benefits.

To determine the plaintiff's ability to return to his old job (step four) or work in any other job (step five), the ALJ assesses the claimant's residual functional capacity (RFC). *Perez*, 415 F.3d at 461. "[The] residual functional capacity is the most [the claimant] can still do despite [his] limitations. [The ALJ] assess[es] [the] residual functional capacity based on all the relevant evidence in [the claimant's] case record." 20 C.F.R. § 404.1545(a)(1). In determining the RFC, the ALJ considers all medical and nonmedical evidence that relates to all impairments suffered by the claimant, including non-severe impairments. 20 C.F.R. § 404.1545.

Here, the ALJ found that Church was not disabled at step five of the sequential analysis.[17] The ALJ found that plaintiff was capable of working as a polisher, surveillance system monitor, or order clerk based on his RFC, age, education, work history, and testimony of a vocational expert.[18] In his appeal, Church argues that the ALJ committed five reversible errors:

(1) The ALJ failed to give controlling weight to the opinions of Church's treating physician;

(2) The ALJ did not include the opinions of Church's treating physician when he determined Church's RFC;

---

[17] SSA Decision (Rec. Doc. 15-1), pp. 13-19.
[18] SSA Decision (Rec. Doc. 15-1), p.18.

(3) The ALJ asked the vocational expert a hypothetical question without including Church's non-severe impairments;

(4) The ALJ accepted the vocational experts testimony even though it was inconsistent; and

(5) The ALJ did give not give great weight to the Veteran's Administration determination that Church is 100% disabled.

### III. Weight of the Treating Physician's Opinions

First, Church argues that the ALJ erred by not giving weight to his treating physician's opinion and failing to explain why he did not give weight to the treating physician's opinion. Under Social Security regulations, a treating physician is "a physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502. During his testimony, Church explained that he sought treatment for his condition while he was in the army, and that he is receiving treatment from the VA, specifically seeing a pain management doctor. Church does not give the names of his treating physicians during the questioning. In his appeal of the ALJ's decision, Church again does not specifically name any treating physician's but quotes the medical conclusions of Dr. Lujan as his treating physician.[19] After a review of the record, the court is uncertain which of Church's doctors are considered "treating physicians" under the Social Security regulations. Dr. Lujan's opinions that are included in the record are part of the Veterans Administration's disability evaluation and finding,[20] and in the initial denial of disability benefits Dr. Lujan is characterized as a non-treating physician.[21] However, several other healthcare professionals

---

[19] Plaintiff's Brief (Rec. Doc. 7), p. 7.

[20] Disability Evaluation Veterans Administration (Rec. Doc. 5-2), pp. 57-65.

[21] Disability Determination Explanation (Rec. Doc. 5-1), p. 56.

repeatedly appear in the record with treatment notes and evaluations, including Dr. Jerome Valenta. According to the administrative record, Dr. Valenta saw the plaintiff at least 13 times.[22] The court found no opinion reports from any of Church's treating physicians, and the ALJ did not reference any treating physician in his decision. The only doctor that the ALJ mentioned in the decision was Dr. David Atkins[23] who had prepared a disability assessment based on Church's medical records for the initial disability benefits determination.[24]

"The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (citing *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994)). If the treating physician's opinion on the nature and severity of the impairment is consistent with other substantial evidence and is supported by diagnostic techniques, the opinion should be given controlling weight. *Id.* The ALJ has the sole responsibility for determining the claimant's disability status and can reject or give less weight to the opinions of a treating physician for good cause. *Id.* at 455-56. For example, an ALJ could give a treating physician's opinion less weight if the opinion is conclusory, unsupported by medical or diagnostic tests, or otherwise unsupported by evidence. *Id.* at 456. However, "an ALJ is required to consider each of the § 404.1527([c]) factors before declining to give any weight to the opinions of the claimant's treating specialist." *Id.* Those factors include: "(1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the

---

[22] *See* Table of Contents (Rec. Doc. 5-2), pp. 4-8 (showing at least 13 encounters between Church and Dr. Valenta).
[23] ALJ Decision (Rec. Doc. 5-1), pp. 18-19.
[24] Disability Determination Explanation (Rec. Doc. 5-1), pp. 54-63.

opinion with the record as a whole; and (6) the specialization of the treating physician." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)). If the ALJ fails to conduct this analysis, reversal is only appropriate if the failure prejudiced the claimant. *See Boyd v. Colvin*, No. CV 14-2166, 2015 WL 8598537, at *3 (E.D. La. Dec. 14, 2015) (citing *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996)).

Based on the court's review of the administrative record, the plaintiff did not submit an opinion of any of his treating physicians that directly addressed his ability to perform light work. Even if the ALJ erred by not referencing the treatment medical records, this error was harmless. The medical records provided indicate that the plaintiff consistently reported pain, and consistently received medication to manage the pain. However, the records also indicate that the pain was usually mild or moderate[25] and even non-existent at times.[26] This is consistent with the non-treating medical opinions and consistent with the ALJ's determination that the pain could be managed and did not keep the plaintiff from performing all work.

### IV. Hypothetical Questions to the Vocational Expert

Second, the plaintiff argues that the ALJ erred by not including mental limitations in the hypothetical question he asked the vocational expert. "An ALJ's hypothetical is 'defective unless[:] (1) it incorporates reasonably all disabilities of the claimant recognized by the ALJ, and (2) the claimant or [his] representative is afforded the opportunity to correct deficiencies in the hypothetical.'" *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016) (Bellow v. Chater, 66 F.3d 323 (5th Cir. 1995) (unpublished)). The question that the ALC posed to the vocational expert included the following limitations: the claimant's age; education; job experience; lifting and

---

[25] *See* Mar. 19, 2015 (Rec. Doc. 5-2), p. 129; Dec. 29, 2014 Report (Rec. Doc. 5-2), p. 50; Dec. 2, 2014 Report (Rec. Doc. 5-2), p. 66; Nov. 4, 2014 Report (Rec. Doc. 5-2), p. 73; Oct. 21, 2014 Report (Rec. Doc. 5-2), p. 83; Oct. 6, 2014 Report (Rec. Doc. 5-2), p. 88; Sept. 25, 2014 (Rec. Doc. 5-2), p. 96; Sept. 24, 2014 Report (Rec.Doc. 5-2), p. 101;

[26] *See, e.g.,* Feb. 3, 2015 Report (Rec. Doc. 5-2), p. 31; Aug. 26, 2014 Report (Rec.Doc. 5-2), p. 112.

carrying on an occasional basis 20 pounds, on a frequent basis 10 pounds; sitting six hours in an eight hour day; standing and walking four hours in an eight hour day, climbing ramps and stairs on an occasional basis; climbing ladders, ropes, and scaffolds on an occasional basis; stooping on an occasional basis; kneel on an occasional basis; crouching on an occasional basis; crawling on an occasional basis; and require the option to sit or stand after every 45 minutes, with five minutes or less off task with each posture change.[27] The ALJ did not include any mental impairment associated with Church's affective disorder. However, the ALJ characterized those impairments as causing no more than "minimal limitations on the claimant's ability to perform basic mental work activities."[28] The ALJ did not need to incorporate impairments from the affective disorder because the ALJ found that they did not impact Church's ability to work. Further, Church had the opportunity to question the vocational expert on those limitations. Therefore, the ALJ did not err by asking his hypothetical question. Nor did the ALJ err by relying on the vocational expert's answer to his hypothetical question.

### V. Accepting Inconsistent Testimony

Third, Church argues that the ALJ should have discredited the vocational expert's testimony because the expert explained that the plaintiff would be able to be absent about one day per month which was consistent with having to take a five minute break every 45 minutes. The plaintiff argues that taking breaks this often would actually result in being absent approximately two days per month.[29] However, a five minute break for every 50 minutes would result in the plaintiff being off task ten percent of the time, which the vocational expert said was

---

[27] Transcript of Vocational Expert (Rec. Doc. 5-1), pp. 45-47.

[28] ALJ Decision (Rec. Doc. 5-1), p. 18.

[29] In making this calculation, the plaintiff erroneously divided the work day into 45 minute increments, rather than 50 minute increments. *See* Plaintiff's Brief (Rec. Doc. 7), p. 9. A 50 minute time increment accounts for both the 45 minutes of work time and the 5 minute break at the end of each 45 minutes.

typically allowed by employers.[30] Therefore, the vocational expert's testimony was not internally inconsistent, and the ALJ did not unreasonably rely on it.

## VI. Considering the Veteran's Administration's Decision

Finally, Church argues that the ALJ should have given more weight to the Veteran's Administration's determination that he was 100% disabled.

> A VA rating of total and permanent disability is not legally binding on the Commissioner because the criteria applied by the two agencies is different, but it is evidence that is entitled to a certain amount of weight and must be considered by the ALJ. See *Loza v. Apfel*, 219 F.3d 378, 394 (5th Cir. 2000); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994); *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981). In *Rodriguez* and its progeny, [the Fifth Circuit has] sometimes referred to a VA disability determination as being entitled to "great weight." While this is true in most cases, the relative weight to be given this type of evidence will vary depending upon the factual circumstances of each case. Since the regulations for disability status differ between the SSA and the VA, ALJs need not give "great weight" to a VA disability determination if they adequately explain the valid reasons for not doing so.

*Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

The ALJ acknowledged that the VA found Church unfit for duty and permanently disabled. However, the ALJ disagreed with the VA's determinations because of Church's reported actual functioning, and therefore, he did not give the VA's decision significant weight.[31] The ALJ made this statement after specifically explaining how Church's reported level of activity did not support Church's statements about the intensity, persistence and limiting effect of his pain.[32] Because the ALJ based his rejection of the VA's determination on his findings about Church's actual reported functioning, he adequately explained why he did not give great weight to the VA's decision.

---

[30] *See* Transcript of Vocational Expert (Rec. Doc. 5-1), p. 48.
[31] ALJ Decision (Rec. Doc. 5-2), p. 21.
[32] ALJ Decision (Rec. Doc. 5-2), p. 20.

## **CONCLUSION**

The ALJ's finding that Church is not entitled to disability benefits is based on substantial evidence. First, while the ALJ did not specifically mention any of Church's treating physicians, Church has not identified any opinions from a treating physician that are contrary to the ALJ's medical determinations. Therefore, the ALJ did not commit reversible error by not specifically analyzing the treating physician reports in his decision. Second, the ALJ did not commit reversible error by asking the vocational expert a hypothetical question which excluded an impairment that the ALJ determined had minimal effects on Church's ability to function. Third, the vocational expert did not have internally conflicting testimony, and the ALJ did not err by relying on the vocational expert's testimony. Finally, the ALJ adequately explained why he did not adopt the VA's disability finding. For these reasons, the final administrative decision made by the Social Security Administration will be **AFFIRMED.**

Lake Charles, Louisiana, this 19 day of Dec , 2016.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE